UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

                 Plaintiff,

v.

EMANUEL DE JESUS SOSA-LOPEZ,

                 Defendant.
_____

REPORT & RECOMMENDATION
and DECISION & ORDER

06-CR-6198L

## PRELIMINARY STATEMENT

By Order of Hon. David G. Larimer, United States District Judge, dated October 17, 2007, all pretrial matters in the above-captioned case have been referred to this Court pursuant to 28 U.S.C. §§ 636(b)(1)(A)-(B).  (Docket # 35).

Defendant Emanuel De Jesus Sosa-Lopez (hereinafter "Sosa-Lopez") is charged in a single-count indictment with conspiracy to possess with intent to distribute and to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 846.  The conspiracy is alleged to have spanned the period between 2001 and July 2006.  (Docket # 2).

Currently before this Court for Report and Recommendation are Sosa-Lopez's motions to suppress two photographic identifications and to dismiss the indictment.  Also before the Court for Decision and Order is Sosa-Lopez's motion for a bill of particulars.  (Docket ## 18, 25).[1]  The government opposes each of the motions.  (Docket ## 19, 27).

---

[1] Sosa-Lopez's omnibus motions also sought, *inter alia*, immediate disclosure of the government's witness list, discovery and inspection, *Brady* material, *Jencks* material, rulings on evidentiary matters under Rules 404, 608 and 609 of the Federal Rules of Evidence, identification of government informants, joinder of motions, notice

**FACTUAL BACKGROUND**

An evidentiary hearing relating to Sosa-Lopez's motion to suppress photographic identifications was conducted before this Court on August 13, 2007. During that hearing, the government presented the testimony of Officer David Simpson of the Rochester Police Department. No witnesses were called by the defense. (Docket # 28).

According to Simpson's testimony, which this Court finds credible, two proffer sessions were conducted with two different confidential informants on November 3 and November 7, 2006. (Tr. 3, 14-15).[2] Officer Simpson was present for both sessions, along with several other law enforcement officials, an interpreter and the Assistant United States Attorney assigned to the case. (Tr. 5, 15). Although Simpson could not recall the precise sequence of events, he testified that at some point during each of the proffer sessions he conducted a photographic identification procedure. Specifically, Simpson testified that each informant was presented with an array containing six photographs and asked whether he[3] recognized any of the individuals depicted. In each instance the informant indicated that he did and identified the photograph of Sosa-Lopez. (Tr. 12, 16; G.Exs. 3, 5). He then was asked to circle the photograph of the individual he recognized and to record the person's name or names adjacent to the photograph. (Tr. 5-6, 15-16). The informant interviewed on November 3, 2006 circled

---

pursuant to Rule 12(b)(4) of the Federal Rules of Criminal Procedure, disclosure of witness information, a hearing relating to statements by alleged co-conspirators, the preservation of rough notes and a finding that 21 U.S.C. §§ 841 and 843 are unconstitutional. (Docket # 18). Each of these requests was either resolved by the parties or decided in open court by the undersigned on July 9, 2007. (Docket ## 22, 23).

[2] The transcript of the hearing conducted on August 13, 2007 is hereinafter referenced as "Tr. __". (Docket # 28).

[3] The gender of the informants was not disclosed. For ease of reference, this Court will use the male pronoun to refer to each.

Sosa-Lopez's photograph and indicated to the officers that he knew the individual by the names "Tuerto," "Rum Barajas," "Changa" and "Hector." (Tr. 16; G.Ex. 5). The November 7, 2006 informant likewise circled the defendant's photograph and indicated that he knew the individual by the names of "Tuerto" and "Hector." (Tr. 12; G.Ex. 3).

Although Simpson was present for the majority of both proffer sessions, he testified that he could not recall whether he may have left either or both of the meetings briefly in order to use the restroom or to make a telephone call. (Tr. 21-22). Simpson testified that neither he, nor anyone in his presence, indicated or suggested to either informant which of the photographs he should identify. According to Simpson, each informant responded clearly, and neither appeared to be under the influence of alcohol or drugs. (Tr. 5-6, 15, 17, 23).

The photographic array that each informant was shown was introduced into evidence and has been reviewed by this Court. Each photograph in the array is a frontal image of a male's face, neck and part of his shoulders. All of the men appear to be of similar age and coloring, have similarly short-cut hair and have similarly-groomed facial hair. (G.Exs. 1, 3, 5).

## REPORT & RECOMMENDATION

Sosa-Lopez moves to suppress evidence of the photographic identifications on the grounds that the identification procedures were unduly suggestive. Sosa-Lopez also moves to dismiss the indictment, alleging various violations before the grand jury, as well as deficiencies in the indictment itself. (Docket # 18). The following constitute the recommendations of this Court with regard to such motions.

I. <u>**Motion to Suppress Photographic Identifications**</u>

Sosa-Lopez asserts that the photographic identifications of him made by the two confidential informants should be suppressed on the grounds that the procedures utilized were unduly suggestive. An out-of-court photographic identification will be suppressed under the Due Process Clause if "the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968); *see also Stovall v. Denno*, 388 U.S. 293, 301-02 (1967).

In determining whether to exclude a pretrial identification, the court must undertake a two-step analysis. First, the court must consider whether the identification procedure was unduly suggestive. If so, the court then must determine whether the identification nevertheless possesses "sufficient aspects of reliability." *United States v. Bubar*, 567 F.2d 192, 197 (2d Cir.) (citing *Manson v. Brathwaite*, 432 U.S. 98, 109-17 (1977)), *cert. denied*, 434 U.S. 872 (1977). "Even if the procedure was unnecessarily (or impermissibly) suggestive, therefore, a district court may still admit the evidence 'if, when viewed in the totality of the circumstances, it possesses sufficient indicia of reliability.'" *United States v. Bautista*, 23 F.3d 726, 729-30 (2d Cir.) (footnote omitted) (quoting *United States v. Simmons*, 923 F.2d 934, 950 (2d Cir.), *cert. denied*, 500 U.S. 919 (1991)), *cert. denied*, 513 U.S. 862 (1994).

At the government's request, this Court conducted a bifurcated *Wade* hearing.[4] To date, the government has offered evidence only relating to the issue of the suggestiveness of the identification procedures utilized. No continuation of the hearing is necessary if the Court

---

[4] A *Wade* hearing refers to a hearing held pursuant to *United States v. Wade*, 388 U.S. 218 (1967), to determine whether an out-of-court identification resulted from an impermissibly suggestive procedure and, if so, whether it is independently reliable.

finds the identification procedures were not unduly suggestive. If, to the contrary, the Court finds the procedures were impermissibly suggestive, a continuation of the hearing would be warranted to determine whether the witnesses who made the identifications had an independent basis upon which to do so.

According to the testimony presented by Officer Simpson, on November 3 and 7, 2006, two different confidential informants were presented with the same photographic array containing six photographs. Each was asked whether he recognized any of the individuals and instructed that if he did, he should circle the photograph and record the name or names of the person identified. (Tr. 5-6, 15-16). On November 3, 2006, the informant circled the picture of Sosa-Lopez and wrote the names "Tuerto," "Rum Barajas," "Changa" and "Hector" by the photograph. (Tr. 16; G.Ex. 5). On November 7, 2006, the second informant also circled the photograph of Sosa-Lopez and wrote the names "Tuerto" and "Hector" accompanying the picture. (Tr. 12; G.Ex. 3). Simpson testified that no one in his presence suggested which of the photographs the informant should identify. (Tr. 5-6, 15, 17, 23).

Sosa-Lopez challenges the adequacy of the procedures on the grounds that Simpson acknowledged that he may have left the proffer sessions for brief periods, such as to use the restroom or make a telephone call. Sosa-Lopez suggests that one of the other individuals present may have unduly influenced one or both of the informants when Simpson was out of the room, thus resulting in an unreliable identification. Although it is impossible for the Court to discount this possibility entirely, there is no evidence to suggest that anything of the sort occurred in this case. Indeed, Simpson was present for the bulk of the sessions and, importantly, was in

the meeting when the arrays were presented to the witnesses. As described below, the procedures utilized during the presentations were in no way suggestive.

Each informant was shown a six-photograph array, rather than a single photograph of Sosa-Lopez, and asked only to identify anyone that he recognized. Each informant identified the photograph of Sosa-Lopez and identified the names by which he was known to the informant. Sosa-Lopez's photograph, like the others in the array, was a frontal image from the shoulders to the top of his head. All of the men depicted appeared to be of similar age and coloring and had similarly short-cut hair and facial hair. (G.Exs. 1, 3, 5). *See United States v. Maldonado-Rivera*, 922 F.2d 934, 974 (2d Cir. 1990) ("fairness of a photograph array depends upon number of factors, including the size of the array, the manner of presentation by the officers, and the array's contents"), *cert. denied*, 501 U.S. 1233 (1991); *United States v. Marrero*, 705 F.2d 652, 655 n.5 (2d Cir. 1983) (six photographs is an acceptable number for a photographic array); *United States v. Joseph*, 332 F. Supp. 2d 571, 582 (S.D.N.Y. 2004) (finding that photographic array was not unduly suggestive where array contained six photographs of individuals of similar ethnicity, age, hair style and facial hair). *See also United States v. Thai*, 29 F.3d 785, 808 (2d Cir.) ("principal question is whether the picture of the accused, matching descriptions given by the witness, so stood out from all the other photographs as to 'suggest to an identifying witness that [that person] was more likely to be the culprit'") (quoting *Jarrett v. Headley*, 802 F.2d 34, 41 (2d Cir. 1986)), *cert. denied*, 513 U.S. 993 (1994).

On this record, I find that the photographic identification procedures were not impermissibly suggestive. It is thus my recommendation that Sosa-Lopez's motion to suppress these identifications be denied without continuation of the bifurcated hearing.

**II.  Motion to Dismiss Indictment**

Sosa-Lopez has moved to dismiss the indictment on its face and based upon evidentiary insufficiency.  Sosa-Lopez also moves for dismissal due to allegedly improper grand jury instructions and voting irregularities.  (Docket # 18).  Each of Sosa-Lopez's motions will be discussed in turn.

**A.  Dismissal of Indictment on its Face:**  In a three-sentence argument, Sosa-Lopez alleges that the indictment must be dismissed because it fails to set forth a "plain, concise and definite written statement of the essential facts constituting the offense charged."  (Docket # 18) (citing Fed. R. Civ. P. 7(c)(1)) (emphasis in original).  To the contrary, the indictment alleges each of the elements of the crime charged against Sosa-Lopez and comports with the requirements of Rule 7(c)(1) of the Federal Rules of Criminal Procedure.  *See United States v. Bagaric*, 706 F.2d 42, 61 (2d Cir. 1983) (indictment is sufficient on its face where it "track[s] the language of the statute").  Thus, this Court recommends that Sosa-Lopez's motion to dismiss the indictment on its face be denied.

**B.  Evidentiary Insufficiency:**  Sosa-Lopez also moves to dismiss the indictment based on insufficiency of the evidence.  (Docket # 18).  It is well-established that an indictment that is valid on its face, as is the case here, cannot be dismissed on the ground that is based on inadequate or insufficient evidence.  *United States v. Williams*, 504 U.S. 36, 54 (1992); *United States v. Calandra*, 414 U.S. 338, 345 (1974); *United States v. Casamento*, 887 F.2d 1141, 1182 (2d Cir. 1989), *cert. denied*, 493 U.S. 1081 (1990).  Instead, the time to advance such a motion is after the government has presented its case at trial.  *See, e.g.*, *United States v. Gambino*, 809 F. Supp. 1061, 1079 (S.D.N.Y. 1992); Fed. R. Crim. P. 29(a).

Applying the above-cited authority, it is my recommendation that Sosa-Lopez's motion to dismiss the indictment on the grounds of evidentiary insufficiency be denied.

**C. Grand Jury Instructions and Voting Irregularities:** Finally, Sosa-Lopez asserts that dismissal is warranted based upon allegedly improper grand jury instructions and a speculative belief that a number of grand jurors who voted to return the indictment may not have been present during the entire presentation of evidence before the grand jury. (Docket # 18). This Court recommends that these motions also be denied.

With respect to Sosa-Lopez's challenge to the instructions given to the grand jury, "there is no requirement that federal grand jurors be instructed on the law." *United States v. Hernandez*, 2001 WL 1344832, *17 (W.D.N.Y. 2001) (citing *United States v. Zangger*, 848 F.2d 923, 925 (8th Cir. 1988); *United States v. Kenny*, 645 F.2d 1323, 1347 (9th Cir.), *cert. denied*, 452 U.S. 920 (1981)). Moreover, Sosa-Lopez's motion is based upon nothing more than the speculative assertion that the grand jury minutes will reveal some deficiency in the instructions. Hope and speculation are wholly insufficient to overcome the rule of secrecy in grand jury proceedings that is embodied in Fed. R. Crim. P. 6(e). *See*, *e.g.*, *United States v. Jailall*, 2000 WL 1368055, *2 (S.D.N.Y. 2000) (the rule of secrecy, which can only be overcome by a showing by the defendant that grounds exist to dismiss the indictment based upon matters that occurred in the grand jury, applies to legal instructions provided to the grand jury); *United States v. Olin Corp.*, 465 F. Supp. 1120, 1134-35 (W.D.N.Y. 1979) (mere conjecture that some irregularities occurred in the grand jury does not support an inquiry into the proceeding that led to the indictment). In addition, an indictment need not be dismissed where some of the jurors who voted to return the indictment were not present to receive all the evidence, as long as a

quorum of grand jurors was present at all proceedings. *United States ex rel. McCann v. Thompson*, 144 F.2d 604, 607 (2d Cir.) (Hand, J.), *cert. denied*, 323 U.S. 790 (1944). *See also United States v. Byron*, 994 F.2d 747, 748 (10th Cir. 1993); *United States v. Overmyer*, 899 F.2d 457, 465 (6th Cir.), *cert. denied*, 498 U.S. 939 (1990); *United States v. Godoy*, 678 F.2d 84, 86 (9th Cir. 1982), *cert. denied*, 464 U.S. 959 (1983); *United States v. Pastor*, 419 F. Supp. 1318, 1328-29 (S.D.N.Y. 1976).

Accordingly, I also recommend denial of Sosa-Lopez's motions to dismiss the indictment on the basis of speculative claims of voting irregularities and improper instructions.

### **DECISION & ORDER**

Sosa-Lopez has requested a bill of particulars describing the government's factual basis for the charged conspiracy. (Docket ## 18, 25). As previously noted, the indictment charges Sosa-Lopez with participating in a narcotics conspiracy spanning approximately five years, the object of which was the distribution of at least 5 kilograms of cocaine. (Docket # 2). No overt acts in furtherance of the conspiracy are alleged in the indictment, and none is required. *See, e.g.*, *United States v. Shabani*, 513 U.S. 10, 17 (1994) ("proof of an overt act is not required to establish a violation of 21 U.S.C. § 846").

The purpose of a bill of particulars is to enable the defendant "to identify with sufficient particularity the nature of the charge pending against him, thereby enabling [the] defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987) (citations omitted) (per curiam). A bill of particulars is not to be

used as a discovery device to obtain "evidentiary detail" about the government's case. *See*, *e.g.*, *United States v. Torres*, 901 F.2d 205, 234 (2d Cir.) (citation omitted), *cert. denied*, 498 U.S. 906 (1990). In other words, a bill of particulars should be granted where the information sought is "necessary" to prepare a defense and to avoid double jeopardy, not where it is merely "useful" to the defense in ascertaining the government's proof. *See United States v. Henry*, 861 F. Supp. 1190, 1197 (S.D.N.Y. 1994); *see also United States v. Love*, 859 F. Supp. 725, 738 (S.D.N.Y.), *aff'd sub nom. United States v. Roberts*, 41 F.3d 1501 (2d Cir. 1994). Where the charge against the defendant is broad in scope, a bill of particulars may be more appropriate than where the charged conduct is more narrow. *See*, *e.g.*, *United States v. Barnes*, 158 F.3d 662, 666 (2d Cir. 1998) ("a bill of particulars or other adequate disclosure is appropriate where a conspiracy count covers a complex series of events over a number of years, but provides only the bare bones of the charge"); *United States v. Davidoff*, 845 F.2d 1151, 1154-55 (2d Cir. 1988) (district court abused discretion in denying a bill of particulars identifying victims in seven-year racketeering conspiracy; court noted that principles governing bills of particulars "must be applied with some care when the [g]overnment charges criminal offenses under statutes as broad as RICO").

To warrant a bill of particulars, the indictment's charges against a defendant must be so general that they fail to advise him or her of the specific acts of which they are accused. *See United States v. Torres*, 901 F.2d at 234; *United States v. Henry*, 861 F. Supp. at 1198. In determining that question, the court may consider whether the information sought by the defendant has been made available in alternative forms, such as in discovery or prior court proceedings. *See United States v. Panza*, 750 F.2d 1141, 1148 (2d Cir. 1984); *United States v. Kelly*, 91 F. Supp. 2d 580, 583-84 (S.D.N.Y. 2000); *United States v. Ahmad*, 992 F. Supp. 682,

684 (S.D.N.Y. 1998); *United States v. Feola*, 651 F. Supp. 1068, 1133 (S.D.N.Y. 1987), *aff'd*, 875 F.2d 857 (2d Cir.), *cert. denied*, 493 U.S. 834 (1989).

In this case, Sosa-Lopez has been provided with voluntary discovery, which the government asserts adequately advises him of the charges against him and the nature of the government's case. (Docket # 27). I agree.

At oral argument, and in written submissions made in response to the pending motions, the government has represented that its case against Sosa-Lopez involves his alleged distribution in Atlanta and Chicago of multi-kilograms of cocaine obtained from Mexico. The government further advised that it intends to offer evidence that Sosa-Lopez was a source of cocaine for an individual named Jose Castillo-Martinez, also known as "Joselito." In January 2003, Martinez and three associates, Frank DeJesus, Roberto De La Torre and Ricardo De La Torre, traveled to Mexico via the Laredo border crossing. The next day, Martinez was kidnapped and held for several months as a result of a debt owed to Sosa-Lopez and others. Before the kidnappers released DeJesus (one of the individuals who had traveled with Martinez to Mexico), they gave him a note instructing him to pay the debt to "Tuerto" (an alleged alias of Sosa-Lopez) and others. The government has produced a copy of the note as part of discovery. (*See* Docket ## 24, 27).

On this record, and applying the settled law discussed above, I find that Sosa-Lopez has sufficient information to understand the charges against him and to prepare a defense, to avoid unfair surprise and to interpose a claim of double jeopardy, if appropriate. *See United States v. Bortnovsky*, 820 F.2d at 574. Accordingly, Sosa-Lopez's motion for a bill of particulars is denied.

**CONCLUSION**

For the foregoing reasons, it is my recommendation that Sosa-Lopez's motions to suppress evidence of the photographic identifications and to dismiss the indictment **(Docket # 18)** be **DENIED**. In addition, it is the decision of this Court that Sosa-Lopez's motion for a bill of particulars **(Docket ## 18, 25)** is **DENIED**.

                                    *s/Marian W. Payson*
                                    MARIAN W. PAYSON
                                    United States Magistrate Judge

Dated: Rochester, New York
       October  22 , 2007

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York.[5]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 58.2(a)(3) may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the parties.

**IT IS SO ORDERED.**

    *s/Marian W. Payson*
    MARIAN W. PAYSON
    United States Magistrate Judge

Dated: Rochester, New York
       October  22 , 2007

---

[5] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(F) commences with the filing of this Report and Recommendation. Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the ten days allowed for filing objections has elapsed. *United States v. Andress*, 943 F.2d 622 (6th Cir. 1991); *United States v. Long*, 900 F.2d 1270 (8th Cir. 1990).